**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Marissa B. Reagan, | : | Civil Action |
| | : | |
| Plaintiff | : | No. |
| | : | |
| vs. | : | |
| | : | |
| 3B Pain Management Center, P.C. d/b/a | : | |
| Tri County Pain Management Centers, Tri | : | |
| County Pain Management, P.C. d/b/a Tri | : | |
| County Pain Management Centers, and | : | |
| BEABB, Inc. d/b/a Tri County Pain | : | |
| Management Centers, | : | |
| | : | |
| Defendants | : | |

## COMPLAINT

Marissa B. Reagan ("Plaintiff"), by her undersigned counsel, brings this civil action pursuant to the law cited herein against 3B Pain Management Center, P.C. d/b/a Tri County Pain Management Centers, Tri County Pain Management, P.C. d/b/a Tri County Pain Management Centers, and BEABB, Inc. d/b/a Tri County Pain Management Centers (collectively, "Defendants").

## INTRODUCTION

1.      This is an action arising under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq*. and the Pennsylvania Human Relations Act, 43 Pa. C.S.A. §§ 951, *et seq*. ("PHRA").

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction to hear this action and adjudicate Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1343.

3.      This Court has supplemental jurisdiction to hear Plaintiff's PHRA claim pursuant to 28 U.S.C. § 1367.

4.      All jurisdictional prerequisites to bringing this action have been satisfied because:

(a)      On March 29, 2021, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"); and

(b)      On August 13, 2021, the EEOC issued a Dismissal and Notice of Rights.

5.      Venue is appropriate in the Eastern District of Pennsylvania because Defendant resides within this judicial district and/or may be served with process therein. *See* 28 U.S.C. §§ 1391(b)(1) and (d).

## THE PARTIES

6.      Plaintiff is an adult female and is a citizen and resident of the United States. Plaintiff resides in Ridley Park, Pennsylvania.

7.      3B Pain Management Center, P.C. is a domestic professional corporation with its headquarters located at 600 Louis Drive Suite 202, Warminster, Pennsylvania 18974.

8.      Tri County Pain Management, P.C. is a domestic professional corporation with its headquarters located at 600 Louis Drive Suite 202, Warminster, Pennsylvania 18974.

9.      BEABB, Inc. is a domestic for-profit corporation with its headquarters located at 600 Louis Drive Suite 202, Warminster, Pennsylvania 18974.

10.      Upon information and belief, Defendants employ 50-60 employees.

11.      Defendants are employers within the meaning of Title VII and the PHRA.

12.      At all relevant times, Defendants acted by and through their agents and/or employees.

## **FACTS**

13.     According to Defendants' website, "Tri County Pain Management Centers provides skilled, caring treatment from pain management doctors at medical offices in Philadelphia, West Philadelphia, Warminster, Exton, Ardmore, Allentown, Willow Grove, Bethlehem, Norristown, Neshaminy Valley/Bensalem, Pennsylvania, plus locations in Middletown and Wilmington, Delaware." *See* https://tricountypmc.com/ (accessed November 4, 2021).

14.     Defendants maintain a Sexual Harassment policy that prohibits "harassment of any employee by any Supervisor, employee, customer or vendor on the basis of sex or gender." [Pl. Exhibit 1].

15.     According to Defendants' Sexual Harassment policy, "[i]f the employee feels that he or she has been subjected to conduct which violates this policy, the employee should immediately report the matter to the Manager." [Pl. Exhibit 1].

16.     According to Defendants' Sexual Harassment policy, "[e]very report of perceived harassment will be fully investigated and corrective action will be taken where appropriate." [Pl. Exhibit 1].

17.     On February 2, 2020, Plaintiff began working for Defendants as a Medical Receptionist/Medical Assistant at Defendants' office in Ardmore.

18.     Beginning in June 2020, Defendants began treating a male patient ("GW").[1]

19.     Defendants treated GW until January 28, 2021, which was GW's discharge date.

20.     Between June 2020 and January 28, 2021, GW sexually harassed Plaintiff.

21.     Defendants' office is small and Plaintiff was usually alone with GW in the office, unless he was treating with a doctor.

_____

[1] The patient is referred to by his initials to protect his privacy.

22.     GW sexually harassed Plaintiff every time he was in the office and also by telephoning Defendants' office. For example:

(a)     On June 3, 2020, GW told Plaintiff about how he used a grabber at home to pick up leaves and stated that he was going to go home and practice using it so that he would be able to come in and grab Plaintiff.

(b)     On July 8, 2020, GW told Plaintiff, "I feel very comfortable with you, you are a nice lady, I would like to talk to you about my personal issue. Maybe I can talk to you over your personal phone, or a cup of coffee or even come to my house for a BBQ."

(c)     Also on July 8, 2020, GW told Plaintiff, "You are a very pretty girl, I would like to talk to you, what is your number."

(d)     When GW telephoned the office, he said things to Plaintiff such as "are you going to treat and touch me. I only want you to."

(e)     On numerous occasions, GW told Plaintiff that she was pretty and/or beautiful and made other similar comments.

(f)     On numerous occasions, GW told Plaintiff that when he won his lawsuit, he was going to take Plaintiff on vacation.

(g)     On numerous occasions, GW told Plaintiff that she reminded him of his ex-girlfriend who GW said was around Plaintiff's age.

23.     GW also sexually harassed Dr. Jenna Brunette. For example, GW told Dr. Brunette, "I never have a problem taking my clothes off in front of pretty women like you."

24.     On June 4, 2020, Dr. Brunette reported GW's conduct to Susan Tomasini (Human Resources) and Brian Bayzick (Chief Operating Officer).

25.     Dr. Brunette reported, "[GW] made an inappropriate comment to [Plaintiff] that made her feel uncomfortable. He was talking to her about how he has been using a grabber at

home to pick up leaves and then mentioned he was going to go home and practice using it so that he would be able to come and grab her."

26.     Dr. Brunette also reported, "[i]n the past there have been a few incidents where he has said comments to me while in the treatment room and he was told it was inappropriate. One instance he was in the chiro room and took off his jacket for treatment and commented that 'I never have a problem taking my clothes off in front of pretty women like you.'"

27.     On June 8, 2020, Dr. Bayzick asked Plaintiff if she was okay with GW in the office.

28.     Plaintiff responded, "Hello I am ok with him still coming in, if he says something again I will let you know, I felt uncomfortable but I think by my face he noticed I was uncomfortable maybe he got the hint."

29.     GW, however, did not stop sexually harassing Plaintiff.

30.     On July 8, 2020, Plaintiff reported to Dr. Bayzick that GW telephoned the office and stated to Plaintiff, "'I feel very comfortable with you, you are a nice lady, I would like to talk to you about my personal issue. Maybe I can talk to you over your personal phone, or a cup a coffee or even come to my house for a BBQ' I felt very uncomfortable and I was speechless . . .'"

31.     Plaintiff also reported to Dr. Bayzick that GW came into the office that day and "walked up very closely to my desk and said 'You are a pretty girl, I would like to talk to you, what is your number' I told him 'I am unable to talk to any patients outside of work' he said 'ok that's fine but I would like to talk to you when no one is here . . .'"

32.     Plaintiff also reported to Dr. Bayzick that GW came back to the office and "said he needed water."

33.     On August 24, 2020, Plaintiff reported to Dr. Bayzick and Ms. Tomasini, "[i]t has been a month and [GW] is still continuing harassing me, the photo attached is what was written

on Friday. Today he is on the schedule, he called about the time of his appointment, and told me on the phone 'When I hear your voice, my imagination goes crazy' I don't want to be around him, I do not feel safe, his inappropriate comments are worse every time he speaks to me."

34.     The photos that Plaintiff provided to Dr. Bayzick and Ms. Tomasini are of an index card on which GW wrote, "This is not the first time, nor shall it be the last, that a patient and his therapist become friends while in treatment – and afterward – I really admire your spirit – and want to tell you so much, about the case – and bless you for your care. May I call you sometime? It will be our secret."

35.     Plaintiff also reported to Dr. Bayzick and Ms. Tomasini, "[t]oday [GW] is on the schedule, he called about the time of his appointment, and told me on the phone 'When I hear your voice, my imagination goes crazy' I don't want to be around him, I do not feel safe, his inappropriate comments are worse every time he speaks to me.'"

36.     After Plaintiff's August 24, 2020 report to Dr. Bayzick and Ms. Tomasini, Defendants transferred GW from Dr. Brunette to Dr. Michael Goldstein; however, this did not stop the sexual harassment because Dr. Goldstein was in the same office suite as Plaintiff and GW continued to sexually harass Plaintiff.

37.     On October 28, 2020, Plaintiff reported to Dr. Bayzick and Ms. Tomasini, that, "despite being told he is only to see Dr. Goldstein on Tuesdays and Thursdays due to the history of inappropriate comments he has made," GW came into the office, "was lingering in the office and trying to make comments and excuses to stay longer," and that GW "is stopping in when I am here even though he has been told not to and it made me feel very uncomfortable."

38.     Plaintiff asked Dr. Bayzick and Ms. Tomasini, "[a]re we able to also get him scheduled for a discharge with medical at a different location?"

6

39.    In an October 29, 2020 email, Dr. Bayzick concedes that Plaintiff made "several complaints" about GW.

40.    Plaintiff worked at Defendants' Norristown office on Tuesdays and Thursdays.

41.    On January 29, 2021, a Friday, GW came into the Norristown office to be discharged.

42.    Defendants scheduled Plaintiff to fill in for someone at the Norristown office on the same day as GW's discharge.

43.    Despite Plaintiff's multiple complaints to Defendants about GW's sexual harassment, Defendants did not stop GW's sexual harassment of Plaintiff.

44.    Defendants have multiple locations in the Philadelphia area and could have transferred GW to another location.

45.    Between June 2020 and January 28, 2021, Plaintiff went to work every day feeling unsafe and not knowing whether GW would sexually harass her.

46.    GW's sexual harassment was unwelcome.

47.    As a result of Defendants' failure to protect Plaintiff from GW's unwelcome sexual harassment, Plaintiff left her job with Defendants.

**COUNT I**
**Violation of Title VII**
**Sexual Harassment/Hostile Work Environment**

48.    Plaintiff incorporates by reference each of the foregoing paragraphs of her Complaint by reference as if set forth fully herein.

49.    Taken together, the acts outlined above constitute a hostile work environment based on sex.

50.    GW sexually harassed Plaintiff.

51.    GW's conduct was motivated by the fact that Plaintiff is female.

52.     GW's conduct was unwelcome.

53.     GW's conduct was so severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

54.     Plaintiff believed her work environment to be hostile or abusive as a result of GW's conduct.

55.     As averred above, as a result of Defendants' failure to protect Plaintiff from GW's unwelcome sexual harassment, Plaintiff left her job with Defendants.

56.     Defendants and their management level employees knew or should have known about the harassment but failed to take prompt and adequate remedial action.

57.     Defendants' policies and practices harmed Plaintiff with respect to the terms and conditions of her employment.

58.     Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights.

59.     As a result of Defendants' actions and conduct, Plaintiff suffered and continues to suffer damages, including emotional pain and distress, mental anguish, and loss of enjoyment of life's pleasures.

60.     Plaintiff is entitled to all legal and equitable remedies available under Title VII.

**COUNT II**
**Violation of PHRA**
**Sexual Harassment/Hostile Work Environment**

61.     Plaintiff incorporates by reference each of the foregoing paragraphs of her Complaint by reference as if set forth fully herein.

62.     Taken together, the acts outlined above constitute a hostile work environment based on sex.

63.    GW sexually harassed Plaintiff.

64.    GW's conduct was motivated by the fact that Plaintiff is female.

65.    GW's conduct was unwelcome.

66.    GW's conduct was so severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

67.    Plaintiff believed her work environment to be hostile or abusive as a result of GW's conduct.

68.    As averred above, as a result of Defendants' failure to protect Plaintiff from GW's unwelcome sexual harassment, Plaintiff left her job with Defendants.

69.    Defendants and their management level employees knew or should have known about the harassment but failed to take prompt and adequate remedial action.

70.    Defendants' policies and practices harmed Plaintiff with respect to the terms and conditions of her employment.

71.    Defendants acted with malice or reckless indifference to Plaintiff's state-protected rights.

72.    As a result of Defendants' actions and conduct, Plaintiff suffered and continues to suffer damages, including emotional pain and distress, mental anguish, and loss of enjoyment of life's pleasures.

73.    Plaintiff is entitled to all legal and equitable remedies available under the PHRA.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to:

(1)    Issue a Declaratory Judgment declaring that Defendants' actions as set forth in this Complaint are unlawful and violate Title VII and the PHRA.

(2)      Issue equitable/injunctive relief including:

(a)      Issue preliminary and permanent injunctions enjoining and restraining Defendants, their officers, agents, employees, and those acting in participation with Defendants, from engaging in any act or practice of harassment against employees in violation of Title VII and the PHRA.

(b)      Order Defendants to provide training to all employees on harassment prevention and related compliance under Title VII and the PHRA—with the training specifics to be tailored to the problems, deficiencies, and gaps that the evidence shows.

(c)      Order Defendants to electronically deliver to its employees a copy of the jury verdict and trial court judgment.

(d)      Order Defendants to report on the manner of compliance with the terms of any final order for non-monetary equitable relief issued under Title VII and the PHRA—with the reporting specifics to be tailored based on the evidence.

(3)      Enter judgment in favor of Plaintiff and against Defendants for compensatory damages for emotional distress, mental anguish, humiliation, and embarrassment.

(4)      Enter judgment in favor of Plaintiff and against Defendants for punitive damages, as allowable by law.

(5)      Award Plaintiff reasonable attorney's fees together with the costs of this action.

(6)      Award Plaintiff pre-judgment and post-judgment interest.

(7)      Enter judgment in favor of Plaintiff for any other monetary losses as a direct result of Defendants' violation of Title VII and the PHRA, including but not limited to negative tax consequence damages.

(8)    Award such other and further legal and equitable relief as may be necessary and appropriate to redress fully the deprivation of Plaintiff's rights, to prevent their recurrence in the future and to protect other employees from such unlawful behavior.

## JURY DEMAND

Plaintiff demands a jury to try all claims triable by jury.


Dated: November 10, 2021

Stephanie J. Mensing
PA ID No. 89625
Mensing Law LLC
1635 Market Street, Suite 1600
Philadelphia, PA 19103
(215) 586-3751; (215) 359-2741 fax
stephanie@mensinglaw.com
Attorney for Plaintiff

# Pl. Exhibit 1

# Tri County

# Pain Management Centers

# Employee Handbook

06/08/2018
revised  06/11/2020
revised 07/09/2020

individuals indicated above, the employee should contact any higher-level manager in his or her reporting hierarchy. Every report of perceived harassment will be fully investigated and corrective action will be taken where appropriate. All complaints will be kept confidential to the extent possible, but confidentiality cannot be guaranteed. In addition, the Company will not allow any form of retaliation against individuals who report unwelcome conduct to management or who cooperate in the investigations of such reports in accordance with this policy.

If an employee feels he or she has been subjected to any such retaliation, he or she should report it in the same manner in which the employee would report a claim of perceived harassment under this policy. Violation of this policy including any improper retaliatory conduct will result in disciplinary action, up to and including discharge. All employees must cooperate with all investigations.

## 1-5. Sexual Harassment

It is Pain Management Centers's policy to prohibit harassment of any employee by any Supervisor, employee, customer or vendor on the basis of sex or gender. The purpose of this policy is not to regulate personal morality within the Company. It is to ensure that at the Company all employees are free from sexual harassment. While it is not easy to define precisely what types of conduct could constitute sexual harassment and there is a wide range of behavior that may violate this policy even if such behavior does not violate the law, examples of prohibited behavior include unwelcome sexual advances, requests for sexual favors, obscene gestures, displaying sexually graphic magazines, calendars or posters, sending sexually explicit e-mails, text messages and other verbal or physical conduct of a sexual nature, such as uninvited touching of a sexual nature or sexually related comments. Depending upon the circumstances, improper conduct also can include sexual joking, vulgar or offensive conversation or jokes, commenting about an employee's physical appearance, conversation about your own or someone else's sex life, or teasing or other conduct directed toward a person because of his or her gender which is sufficiently severe or pervasive to create an unprofessional and hostile working environment.

If the employee feels that he or she has been subjected to conduct which violates this policy, the employee should immediately report the matter to the Manager. If unable for any reason to contact this person, or if the employee has not received a satisfactory response within five (5) business days after reporting any incident of perceived harassment, the employee should contact the COO. If the person toward whom the complaint is directed is one of the individuals indicated above, the employee should contact any higher-level manager in his or her reporting hierarchy. Every report of perceived harassment will be fully investigated and corrective action will be taken where appropriate. All complaints will be kept confidential to the extent possible, but confidentiality cannot be guaranteed. In addition, the Company will not allow any form of retaliation against individuals who report unwelcome conduct to management or who cooperate in the investigations of such reports in accordance with this policy. If you feel you have been subjected to any such retaliation, report it in the same manner you would report a claim of perceived harassment under this policy. Violation of this policy including any improper retaliatory conduct will result in disciplinary action, up to and including discharge. All employees must cooperate with all investigations.

7